# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Case No._____

_____

JUSTIN FRETTE,

        Plaintiff,

                                    **COMPLAINT**

v.

SANTANDER CONSUMER USA,
AWR ENTERPRISES, INC.,
AND WILLIAM E. DECKER, INDIVUDALLY,

        Defendants.

_____

## JURISDICTION

1.  Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d) and for pendant state law claims pursuant to 28 U.S.C. §1367.

2.  This action arises out of Defendants' Santander Consumer USA, AWR enterprises Inc., and William E. Decker's, violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and pursuant state law claims including Minn. Stat. § 336.9-609 and Invasion of Privacy.

3.   Venue is proper in this District because the acts and transactions occurred in this District, Plaintiff resides in this District, and Defendants transact business in this District.

**PARTIES**

4.   Justin Frette (hereinafter "Plaintiff") is a natural person residing in the County of Hubbard, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.   Defendant Santander Consumer USA (hereinafter "Defendant Santander") is a "debt collector," for the purpose of 15 U.S.C. § 1692f(6) because it uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. 15 U.S.C. § 1692a(6). Defendant operates from an address of P.O. Box 961245, Fort Worth, TX 76161-1245 and has a registered agent for service of CT Corporation System Inc., 1010 Dale St N, St. Paul, MN  55117.

6.   Defendant AWR enterprises Inc. (hereinafter "Defendant AWR"), is a "debt collector," for the purpose of 15 U.S.C. § 1692f(6) because it uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security

interests. 15 U.S.C. § 1692a(6). Defendant operates from an address of 11821 63rd St NE, Albertville, MN  55301.

7.      Defendant William Earl Decker (hereinafter "Defendant Decker") is a "debt collector," for the purpose of 15 U.S.C. § 1692f(6) because he uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. 15 U.S.C. § 1692a(6). Defendant Decker is an employee of Defendant AWR.

## FACTUAL SUMMARY

8.      On February 26, 2018, Plaintiff incurred a debt with Defendant Santander. The debt was primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5). Specifically, the debt was an auto loan for a 2016 Chevrolet Silverado 1500, secured by Plaintiff's home.

9.      Plaintiff entered into a Retail Installment Contract and Security Agreement with Defendant Santander on February 26, 2018.

10.     Pursuant to the executed Agreement, page 2, paragraph 10,

> "May immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises."

11.   Plaintiff failed to make all the payments on time to Defendant Santander and therefore Plaintiff was in default prior to March 12, 2021.

12.   Sometime before May 12, 2021, Defendant Santander hired Defendant AWR to self-help repossess Plaintiff's vehicle.

13.   On May 12, 2021, at approximately 4:30 p.m., Defendant Decker, in an attempt to repossess Plaintiff's vehicle, entered Plaintiff's residence without permission.

14.   By entering Plaintiff's residence without permission, Defendant Decker violated the February 26, 2018 Agreement by breaching the peace.

15.   Plaintiff was eating dinner with his family when he heard footsteps and then banging on the wall that separates the kitchen from the staircase. Plaintiff heard a man say, "hello?" Plaintiff's fiancé went towards the voice and asked, "who is it?" Plaintiff's fiancé then heard Defendant Decker state that he was looking for Justin, and that he was there for the truck.

16.   Plaintiff saw his children in fear as they were scared that someone had come inside of their home without their prior knowledge or

permission. He told the children, ages 5, 8, and 10, to go to their rooms and close their bedroom doors for safety concerns.

17. Plaintiff told his fiancé to go and protect their small children. He was scared and confused as to who Defendant Decker was and why he had just entered Plaintiff's home without permission.

18. Plaintiff asked Defendant Decker why he was inside of his home, Defendant Decker stated that he thought it was an apartment. Plaintiff explained that it was not an apartment and that he had just trespassed into a single-family dwelling.

19. Plaintiff repeatedly instructed Defendant Decker to exit his home, reminding Defendant Decker that he was trespassing.

20. Despite Plaintiff's demands that Defendant Decker exit Plaintiff's home, Defendant Decker would not voluntarily leave Plaintiff's house thus constituting trespass and breach of peace.

21. Plaintiff then began getting "boisterous" to get Defendant Decker to leave his residence, repeating himself at least 5-10 different times, each time increasing the tone, tenor and volume of his demand.

22. Defendant Decker stated that he was there for Plaintiff's pickup truck. Plaintiff advised Defendant Decker that he was in breach of contract

by trespassing into his residence and informed Defendant Decker that he would not give up the truck voluntarily.

23. Plaintiff asked Defendant Decker to identify himself, but he would only state his name was "Bill," Defendant Decker refused to reveal his last name and failed to disclose the company he was working for.

24. Defendant Decker not only trespassed into Plaintiff's home, but he also entered Plaintiff's home without a mask on during a pandemic, despite the Minnesota Governor's Mask Mandate pursuant to Executive Order 20-81, again in breach of the peace.

25. Plaintiff was fearful that he and his family were at great risk of contracting COVID-19 due to Defendant Decker's reckless and deliberate disregard for the Governor's Executive Order.

26. Once Plaintiff got Defendant Decker out of his residence, Defendant Decker continued to express to Plaintiff that he was there to pick up Plaintiff's 2016 Chevrolet Silverado half ton pickup truck.

27. Plaintiff also advised Defendant Decker that he was calling the police due to him breaking the law by trespassing and breaching the peace.

28. Defendant Decker agreed with Plaintiff that he should call the police due to his actions. At that time, Defendant Decker advised Plaintiff that he would not take his truck.

29.     In the wake of Plaintiff's call, Officer A. Rittgers of the Park Rapids Police Department, arrived on the scene at 4:48 p.m.

30.     Defendant Decker apologized to Plaintiff at this time. Defendant Decker still seemed to be confused that Plaintiff's home was not an apartment building. Both Officer Rittgers and Plaintiff explained again that Plaintiff's home was a residence with a house number and not an apartment.

31.     Defendant Decker then stated that the company who sent him, Defendant AWR, had the wrong information written down for Plaintiff's address. Defendant Decker's explanation did not explain why he trespassed into Plaintiff's home to repossess a vehicle.

32.     Plaintiff expressed to Defendant Decker that he and his company, Defendant AWR, should do a better job of making sure they have the correct address before going to repossess someone's belongings. Defendant Decker agreed and everyone left the scene. Before leaving Defendant Decker stated that he called his company, Defendant AWR, and advised them of his wrongdoings and let Plaintiff know once more that they were not going to repossess his truck at that time.

33.     Since this event, Plaintiff has had nightmares and many restless nights of sleep. Plaintiff is worried that someone else is going to try and break

into his residence as a result from this incident, he fears for his safety and for the safety of his family. Plaintiff is fearful of answering the door whenever someone knocks.

34.    Additionally, Plaintiff is left with the embarrassment of explaining to his children what happened that day. Plaintiff's children express to Plaintiff how they fear people entering their home, and how they are "scared that someone is going to get them."

35.    Plaintiff's wife is worried for the health and safety of herself as well as her children. Plaintiff's family has lost their sense of security in a place that they used to feel safest, they are worried that they will never feel safe in their home again.

36.    Defendants Decker and AWR's unlawful conduct negatively affects the entire family. They stole safety and security. Not to mention that Defendant Decker put Plaintiff's family in danger by choosing not to wear a mask while trespassing into Plaintiff's private residence.

37.    By breaching the peace during a self-help repossession, Defendant Decker violated Minn. Stat. § 336.9-609.

38.    By violating Minn. Stat. § 336.9-609 during a repossession, Defendant Decker unlawfully attempted repossession, in violation of 15 U.S.C. § 1692f(6).

39. Defendants' conduct in illegally entering Plaintiff's residence was trespass and in violation of 15 U.S.C. §1692f(6).

40. Defendants' illegal conduct was intentional and in deliberate disregard for Plaintiff's rights under state and federal law.

## DAMAGES

41. Defendants infringed upon Plaintiff's rights proscribed by Congress to not be subject to abusive, illegal, and unfair debt collection practices.

42. Defendants caused Plaintiff to expend time and resources to hire an attorney to defend himself and vindicate his rights.

43. Defendants caused Plaintiff emotional distress due to unlawfully trespassing into his home and the fact that his fiancé and his three (3) minor children were home at the time of the incident, and he feared for his and their health and safety.

## RESPONDEAT SUPERIOR LIABILITY

44. The acts and omissions of Defendant Decker, Defendant AWR, and any other debt collectors employed as agents by Defendant Santander who communicated with Plaintiff- further described herein- were committed within the time and space limits of their agency relationship with their principal, Defendant Santander.

45.   The acts and omissions by Defendant Decker, Defendant AWR, and any other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Santander in collecting consumer debts.

46.   By committing these acts and omissions against Plaintiff, Defendant Decker and any other debt collectors were motivated to benefit their principal, Defendant Santander.

47.   Defendant Santander, is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state or federal law by its collection employees, including Defendant Decker and Defendant AWR.

## STANDING

48.   Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

   a. a valid injury in fact;

   b. which is traceable to the conduct of Defendants;

   c. and is likely to be redressed by a favorable judicial decision.

   *See TransUnion L.L.C. v. Ramirez*, 2021 WL 2599472 (U.S. June 25, 2021),

   *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), and *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

49.    In order to meet the standard laid out in *Ramirez*, *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

*The "Injury in Fact" Prong*

50.    Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

51.    For an injury to be "concrete" it must fall into one or more of three recognized categories of injuries: (1) physical or monetary injury; (2) reputational harms, disclosure of private information, intrusion upon seclusion; (3) or infringement of constitutional rights. *TransUnion L.L.C. v. Ramirez*, 2021 WL 2599472 (U.S. June 25, 2021). In the present case, Defendants unlawful conduct negatively affects the Plaintiff and his entire family. Defendant Decker put Plaintiff's family in danger by choosing not to wear a mask while trespassing into Plaintiff's private residence.

52.    In addition, by breaching the peace during a self-help repossession, Defendant Decker violated Minn. Stat. § 336.9-609.

53.  By violating Minn. Stat. § 336.9-609 during a repossession, Defendant Decker unlawfully attempted repossession, in violation of 15 U.S.C. § 1692f(6).

54.  Defendants' conduct in illegally entering Plaintiff's residence was trespass and in violation of 15 U.S.C. §1692f(6).

55.  Defendants' illegal conduct was intentional and in deliberate disregard for Plaintiff's rights under state and federal law, which falls into an established category, and is thus a concrete injury.

56.  For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.  In the instant case, Plaintiff personally as well as Plaintiff's family, causing monetary damages and emotional distress.

*The "Traceable to the Conduct of Defendant" Prong*

57.  The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendants.

58.  In the instant case, this prong is met simply by the facts that the violative conduct contemplated in this Complaint was initiated by Defendants directly, or by Defendants' agent at the direction of Defendants.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion"*

*Prong*

59.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

60.    In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages. The damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

61.    Furthermore, the award of monetary damages redress the injuries of the past, and prevent further injury by Defendants in the future.

62.    Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendants on the stated claims.

## TRIAL BY JURY

63.    Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES  ACT

## 15 U.S.C. § 1692 et seq.

DEFENDANTS AWR AND DECKER

64.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65.   The foregoing acts and omissions of Defendant AWR and Defendant Decker constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

66.   Specifically, by trespassing and breaching the peace during repossession, Defendants engaged in unlawful repossession, in violation of 15 U.S.C. § 1692f(6).

67.   As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant AWR and Decker.

## COUNT II.

## VIOLATION OF MINN. STAT. § 336.9-609 - BREACH OF PEACE

## ALL DEFENDANTS

68. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. Minnesota statute provides that "[a]fter default, a secured party may take possession of the collateral. . . . A secured party may proceed . . . without judicial process, if it proceeds without breach of the peace." Minn. Stat. § 336.9–609(a)(1), (b)(2).

70. Minnesota courts have adopted the following definition of "breach of the peace": "[a] violation of the public order, a disturbance of public tranquility, by an act or conduct inciting to violence or tending to provoke or excite others to breach the peace [including] any violation of any law enacted to preserve peace and good order." *Bloomquist v. First Nat'l Bank of Elk River*, 378 N.W.2d 81, 85 (Minn. Ct. App. 1986) (quotations omitted). *See also Nichols v. Metropolitan Bank*, 435 N.W.2d 637, 639 (Minn. Ct. App. 1989) ("A secured party must ensure there is no risk of harm to the debtor and others if the secured party chooses to repossess collateral by self-help methods.").

71.   "Neither violence nor threat of violence need occur before a breach of the peace may be found. Rather, 'the probability of violence at the time of or immediately prior to the repossession is sufficient.'" *Saice v. MidAmerica Bank*, No. CIV.98-2396 (DSD/JMM), 1999 WL 33911356, at *2 (D. Minn. Sept. 30, 1999) (cleaned up) (citations omitted).

72.   The self-help repossession by Defendant Decker breached the peace by entering Plaintiff's home without permission and therefore trespassing on Plaintiff's private property, as well as continued to trespass, by failing to leave residence when asked. These actions "disturb[ed] public tranquility" and "tend[ ] to incite violence" and thus constitute a breach of the peace.

73.   Defendants are liable for damages to the Plaintiff for actual damages and for emotional distress and statutory damages provided by Minn. Stat. § 336.9-625.

## COUNT III

## INVASION OF PRIVACY

## ALL DEFENDANTS

74.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

75.   Defendants intentionally intruded upon Plaintiff's solitude, seclusion, and private concerns and affairs during the attempted self-help repossession of the vehicle on May 12, 2021.

76.   Defendants' intrusion was substantial, highly offensive to Plaintiff, and would be highly offensive and objectionable to any reasonable person in Plaintiff's position.

77.   Plaintiff had a legitimate expectation of privacy in his solitude, seclusion, and private concerns and affairs.

78.   As a result of Defendants' intrusion, Plaintiff has suffered emotional distress, and is entitled to an award of actual damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants:

- Ordering Defendants to cease collection activities against Plaintiff;

- For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant;

- For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

- an award of actual damages according to Minn. Stat. §336.9-625 for the breach of peace;

- an award of statutory damages of $3,300.00 for each violation under Minn. Stat. §336.9-625;

- For such other and further relief as may be just and proper.

Dated:  September 10, 2021          Respectfully submitted,


By:   s/ Mark L. Vavreck
Mark L. Vavreck, Esq.
Attorney I.D. #: 0318619
GONKO & VAVRECK PLLC
Designers Guild Building
401 North Third Street, Suite 600
Minneapolis, MN 55401
Telephone:  (612) 659-9500
Facsimile: (612) 659-9220
Email: mvavreck@cgmvlaw.com


Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
Email:
tommy@consumerjusticecenter.com

ATTORNEYS FOR PLAINTIFF

## DECLARATION OF COMPLAINT AND CERTIFICATION
## BY PLAINTIFF

I, Justin Frette, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendants, cause unnecessary delay to Defendants, or create a needless increase in the cost of litigation to Defendants named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated: __09/10/2021__   _____
Justin Frette